THOS. F. PERKINS, Clerk, etc., *v.* CHAS. N. GIBBS, Secretary, etc.

1. THE ACT OF MARCH 19, 1873, ENTITLED "AN ACT TO PROVIDE JUSTICES OF THE PEACE OF THIS STATE WITH THE STATUTE LAWS, AND THE REVISED STATUTES OF TENNESSEE, BY THOMPSON & STEGER," WITH PROVISO. *Construed.* The Clerk of the County Court, under the Act of 1873, is vested with special, and, therefore, limited powers. He is to take the affidavits of the Justices who claim copies, and to determine whether they come within the jurisdiction of the Act, and then he is to certify the result to the Secretary of State His jurisdiction being special and summary, his judgment depends for its validity upon the recitals on its face. He must show the facts which support his jurisdiction and judgment. In other words, the facts stated in the affidavits must constitute the grounds of his judgment, and must be therein stated, otherwise they are nullities, and not binding on the Secretary of State. A Clerk's certificate, wherein no statement of facts appear, but simply his conclusion as to the legal effect of the affidavits, is bad.

2. SAME. *Same.* It is obvious from the enacting clause of the Act under consideration, as well as other provisions which follow the *proviso*, that it was not the intention of the Legislature to require copies of the revised statutes to be furnished to Justices, except in the following cases, viz.: 1. When a Justice has not been furnished with the Code, or the revised Code. 2. When his predecessor was furnished with the Code or the revised statutes, but has failed to hand it over to his successor, and his successor has been unable to recover it by law. 3. When the Code, or revised Code, was not furnished to his predecessor. 4. When the Code or revised statutes furnished to his predecessor has been lost or destroyed. The intention of the Legislature is clearly expressed as to the furnishing the revised statutes in the four classes of cases enumerated. It is manifest that these provisions, as well as the enacting clause, are irreconcilable with the idea that any Justice who may have lost one of the printed Acts, is thereby entitled to a copy of the revised statutes.

Thos. F. Perkins, Clerk, etc., v. Chas. N. Gibbs, Secretary, etc.

3. SAME. *Same.* It was supposed by the Legislature that there might be new counties, whose Justices had not been supplied with the Code and the subsequent Acts, and the *proviso* was intended to furnish the Justices so situated with the revised statutes. Under this construction there is no antagonism between the *proviso* and the other portions of the Act.

4. STATUTES. *Construction of. The Court must be governed by the intention of a statute. When.* Held, " Our business is to ascertain and declare the intention of the Legislature. To do this we are to look at the entire Act, and if there are inconsistent provisions, which can not be reconciled, then, if the intention is apparent, we are to follow that, even if, in so doing, we depart from the letter of the statute."

Case cited: The State *v.* Clarksville and Russellville Turnpike Co., 2 Sneed, 89.

---

FROM DAVIDSON.

---

Appeal from the Circuit Court. NATHANIEL BAXTER, Judge.

THOS. M. STEGER for Perkins.

JAMES W. McHENRY for Gibbs.

NICHOLSON, C. J., delivered the opinion of the Court.

This is a proceeding in the Circuit Court of Davidson County, by the Clerk of the County Court of Williamson County, against the Secretary of State, to compel him to deliver to said Clerk eight copies of Thompson & Steger's Revised Statutes, in pursuance of the Act of 1873, ch. 56. Upon his application for the Revised Statutes the Clerk presented to the Secretary of State the following certificate:

"I, Thos. F. Perkins, Clerk of the County Court of Williamson County, Tenn., hereby certify that the following-named Justices of the Peace of my county have complied with the provisions of the Act passed on the 19th of March, 1873, by the General Assembly of Tennessee, entitled 'an Act to provide the Justices of the Peace of this State with the Statute Laws,' and that they are entitled to receive copies of the Revised Statutes of Tennessee, by Thompson & Steger."

Upon the return to an alternative mandamus, the defendant moved the Court to quash the writ, and to dismiss the petition. The motion to dismiss was sustained, and the petitioner has appealed.

The question involved in this case makes it necessary for us to construe the Act of March 19, 1873, entitled "an Act to provide Justices of the Peace of this State with Statute Laws."

The title of the Act manifests, with sufficient clearness, its general purpose and object. It may aid us, in ascertaining its true meaning, to revert to the reason which made such an Act necessary. It is the established policy of the State to supply each Justice of the Peace with a copy of the printed Acts of the General Assembly, to go to his successor. At different intervals of time it has been the policy to provide the Justices with copies of the statutes compiled, or revised, or codified. When the statutes were codified in 1858, each Justice of the Peace was furnished with a copy of the Code, not as his private property, but

to be held and used in his official capacity, and to be transmitted or transferred to his successor. In like manner, since the Code, each Justice has been furnished with a copy of the printed Acts of each successive session of the Legislature.

From the constant changes taking place in the offices of Justices of the Peace, from death, resignation, expiration of term, creation of additional Justices in cities or towns, and the establishment of new counties, it has always been found, that after the lapse of a few years, many Justices of the Peace are not supplied with the Code and printed Acts, either from failure to be suplied originally, or in consequence of the increase of the number of Justices by special legislation, or by the creation of new counties, or by the failure of Justices to preserve and turn over to their successors the books of their offices, or on account of the destruction and loss of the books from various casualties.

It was to remedy this state of things that the Legislature, in 1873, enacted the statute "to provide Justices of the Peace of this State with Statute Laws."

The first provision in the Act designates the Clerks of the County Courts, and the Secretary of State, as the officers through whom the Justices are to be supplied with the Revised Statutes, by Thompson & Steger. Upon the certificate of the County Clerk that any Justice is not supplied with a copy of the Code of 1858, it is the duty of the Secretary of State to deliver to the Clerk a copy of the Revised Statutes,

which, by a subsequent provision, is to contain all the Acts, including those of the session of 1873.

This provision for furnishing any Justice who is not supplied with the Code, with a copy of the Revised Statutes, is followed by this *proviso:* " That the Revised Statutes aforesaid shall only be furnished to the Justices of the Peace of any county, when it shall appear from their affidavits that they are not supplied with the Code of 1858, and the subsequent Acts of the General Assembly."

If this *proviso* should be regarded as an independent and separate statute, or section of a statute, it might be construed to mean that any Justice of any county, who might make affidavit that he is not now supplied with the Code and the subsequent statutes, from having lost one or more of the printed Acts which had been furnished to him or his predecessor, might be entitled to a copy of the Revised Statutes.

Our business is to ascertain and declare the intention of the Legislature.    To do this we are to look at the entire Act, and if there are inconsistent provisions, which can not be reconciled, then, if the intention is apparent, we are to follow that, even if in so doing we depart from the letter of the statute. *The State* v. *Clarksville and Russellville Turnpike Co.,* 2 Sneed, 89.

It is obvious from the enacting clause of the Act under consideration, as well as other provisions which follow the *proviso* just quoted, that it was not the intention of the Legislature to require copies of the

Revised Statutes to be furnished to Justices, except in the following cases, viz. :

1. When a Justice has not been furnished with the Code, or the Revised Code.

2. When his predecessor was furnished with the Code or the Revised Statutes, but has failed to hand it over to his successor, and his successor has been unable to recover it by law.

3. When the Code or Revised Code was furnished to his predecessor.

4. When the Code or Revised Statutes furnished to his predecessor has been lost or destroyed.

The intention of the Legislature is clearly expressed as to the furnishing the Revised Statutes in the four classes of cases enumerated. It is manifest that these provisions, as well as the enacting clause, are irreconcilable with the idea that any Justice, who may have lost one of the printed Acts, is thereby entitled to a copy of the Revised Statutes.

What, then, was the intention of the Legislature in the *proviso* " that the Revised Statutes shall only be furnished to the Justices of the Peace of any county where it shall appear from their affidavits that they are not supplied with the Code of 1858, and the subsequent Acts of the General Assembly." The clause has reference to the condition of the Justices of any county, and evidently assumes that there may be some counties whose Justices had not been furnished with the Code and the subsequent Acts. It was intended to provide for the Justices of such counties, or at

Thos. F. Perkins, Clerk, etc., *v.* Chas. N. Gibbs, Secretary, etc.

least for such of them as would make affidavit that they had not been furnished with the Code and the subsequent Acts.

It was supposed by the Legislature that there might be new counties whose Justices had not been supplied with the Code and the subsequent Acts, and the *proviso* was intended to furnish the Justices so situated with the Revised Statutes. Under this construction there is no antagonism between the *proviso* and the other portions of the Act.

Assuming that we have correctly developed the intention of the Legislature, the question arises : Was the Secretary of State bound to furnish the copies of the Revised Statutes applied for by the County Court Clerk, upon the certificate presented for that purpose? He certifies that the several Justices named are entitled to copies under the Act of 1873, but this is merely the conclusion of the Clerk, from his view of the facts and of the law. He is vested with special and, therefore, limited powers in the premises. He is to take the affidavits of the Justices who claim copies, and to determine whether they come within the provisions of the Act, and then he is to certify the result to the Secretary of State. His jurisdiction being special and summary, his judgment depends for its validity upon the recitals on its face. He must show the facts which support his jurisdiction and his judgment. In other words, the facts stated in the affidavits must constitute the grounds of his judgment,

and must be therein stated, otherwise they are nullities, and not binding on the Secretary of State.

Upon looking to the certificate of the Clerk, we find in it no statement of facts, but simply his conclusion as to the legal effect of the affidavits. The Secretary of State was not bound to deliver the copies applied for on such certificates.

The petition was properly dismissed, and the judgment is affirmed.